IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STEVEN R. BEARD, | ) | |
| | ) | Case No. CV-07-194-N-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v | ) | **DECISION AND ORDER** |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF SOCIAL AND HEALTH SERVICES, | ) | |
| ROBIN ARNOLD-WILLIAMS, IN HER | ) | |
| CAPACITY AS DIRECTOR OF | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF SOCIAL AND HEALTH SERVICES | ) | |
| AND AS AN INDIVIDUAL, LALITHA | ) | |
| MOORTHY, IN HER CAPACITY AS A | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF SOCIAL AND HEALTH SERVICES | ) | |
| EMPLOYEE AND IN HER INDIVIDUAL | ) | |
| CAPACITY, SARAH JACKSON IN HER | ) | |
| CAPACITY AS A WASHINGTON STATE | ) | |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES EMPLOYEE AND | ) | |
| IN HER INDIVIDUAL CAPACITY, | ) | |
| APRIL RIVERA IN HER CAPACITY AS | ) | |
| AN AGENT FOR THE WASHINGTON | ) | |
| STATE DEPARTMENT OF SOCIAL | ) | |
| AND HEALTH SERVICES AND IN HER | ) | |
| INDIVIDUAL CAPACITY, STATE OF | ) | |
| IDAHO, IDAHO DEPARTMENT OF | ) | |
| HEALTH AND WELFARE, RICHARD | ) | |
| ARMSTRONG, DIRECTOR OF THE | ) | |
| IDAHO DEPARTMENT OF HEALTH | ) | |
| AND WELFARE AND IN HIS | ) | |

**Memorandum Decision and Order - Page 1**

INDIVIDUAL CAPACITY, CRYSTAL   )
HANSON IN HER CAPACITY AS AN   )
IDAHO DEPARTMENT OF HEALTH   )
AND WELFARE EMPLOYEE AND IN   )
HER INDIVIDUAL CAPACITY, BONITA )
HAFER IN HER CAPACITY AS AN   )
IDAHO DEPARTMENT OF HEALTH   )
AND WELFARE EMPLOYEE AND IN   )
HER INDIVIDUAL CAPACITY, ROBERT)
VAN IDOUR AS AN AGENT OF THE   )
STATE OF IDAHO DEPARTMENT OF   )
HEALTH AND WELFARE, HEATHER   )
LEE IN HER CAPACITY AS AN AGENT )
OF THE STATE OF IDAHO   )
DEPARTMENT OF HEALTH AND   )
WELFARE, CITY OF LEWISTON,   )
IDAHO, PAUL AYERS AND FOUR JOHN)
DOE POLICE OFFICERS EMPLOYED BY)
THE CITY OF LEWISTON, IDAHO, IN   )
THEIR CAPACITY AS POLICE   )
OFFICERS OF THE CIT OF LEWISTON, )
IDAHO,   )
   )
        Defendants.   )
_____)

## INTRODUCTION

The Court has before it Heather Lee's Motion to Dismiss (Docket No. 43),

Steven Beard's Motion to Stay Proceedings (Docket No. 30), and Defendants

Richard Armstrong, Crystal Hanson, and Bonita Hafer's Motion for Summary

Judgment (Docket No. 68).  The Court now issues the following decision.

## BACKGROUND

**Memorandum Decision and Order - Page 2**

Steven Beard, appearing pro se, alleges that his three children were wrongfully taken from him and his wife Anna by the Child Protective Services of Idaho and Washington.  Anna has an epileptic condition that sometimes renders her unconscious.

The Beards' first child, C.B., was born at Swedish Hospital in Seattle on July 6, 2005.  Steven alleges that Anna's family, the Battistis, insinuated themselves in the birth process by photographing the delivery, despite the Beards' objections.  Steven was angered by this, and by the hospital's lack of action to prevent it.

Following the birth, a pediatrician saw Anna Beard breast feeding C.B., expressed concern because of her medication's effect on her breast milk, and ordered C.B. sent back to the nursery.  Steven lost his temper and told the doctor to keep his hands off his wife and child, threatening to "knock him on his ass."

The pediatrician placed a medical hold on C.B. and notified Child Protective Services because of concerns about the child's welfare.  A child protective worker, Holly Freed, arrived to perform an investigation.  Steven alleges that Anna's mother Stephanie Battisti, also an employee of the Washington State Department of Social and Health Services, maliciously encouraged Holly Freed to involve herself in the custody of C.B.  Specifically, Steven alleges that Stephanie Battisti's

**Memorandum Decision and Order - Page 3**

intent was to obtain custody of C.B., either for herself or a member of her family, encouraging Anna Beard to divorce Steven and rejoin her immediate family to care for C.B.  Steven further alleges that emails between Battisti family members can prove this intent.

The Child Protective Services case was eventually transferred from Holly Freed to another case worker, Sarah Jackson.  Steven claims that Jackson ordered that he, Anna and C.B. relocate to Vashon Island to live with Stephanie Battisti, Anna's mother, which the State of Washington disputes.  Case Worker Jackson recorded concerns about Anna's ability to properly and safely care for C.B. in view of her epilepsy.  Steven believes that Jackson's reports ignored his child-rearing efforts, focusing only on his anger and hostility toward Jackson herself.  Finally, Jackson was concerned that Mrs. Beard anti-seizure medication was present in her breast milk, adversely affecting C.B.'s health.  Mr. Beard alleges that he obtained opinions from several doctors disputing that the breast feeding had any adverse effects on C.B.

According to Steven, Jackson's reports about the Beards allegedly became very biased.  For example, Jackson noted simply that Anna had a seizure while holding C.B., failing to report that Steven took the child safely away from his wife. The complaint also implies that Jackson brought focus to mundane facts, reporting

them as if they constituted dangers to C.B.

Case worker Jackson brought a hearing in the King's County Juvenile Court on August 26, 2005.  The court issued a "shelter care order" that required Steven and Anna not to "argue or become angry" with each other.  Steven alleges that there was insufficient evidence to support that order.  During the subsequent weeks, Jackson determined that Anna's breast milk adversely affected C.B., causing her eyes to roll back in her head.  After arguing with Steven about the breast feeding, Jackson filed an emergency order to take custody of C.B. According to the complaint, Jackson took C.B. to an area hospital, where doctors examined her and gave her a clean bill of health.  The State of Washington disputes this.

The nursing agency that was serving the Beards abruptly refused to send any more nurses, because they could not tolerate Steven's frequent and angry outbursts. According to Steven, Child Protective Services wrongly inferred that Steven's hostility toward the nurses indicated a danger to C.B.

By order of King County Juvenile Court, C.B. was placed with Maya Battisti, who is Anna Beard's sister, in September, 2005.  Mr. Beard's attorney filed a motion to set aside this order, but the Washington court denied it.  Mr. Beard alleges that Child Protective Services warned him and his wife that the state

**Memorandum Decision and Order - Page 5**

would take custody of any further children, and recommended that the couple sterilize themselves.  The State of Washington disputes this.

A new case worker, Lalitha Moorthy, took over the Beards' case.  She allegedly made no effort to reunite the family, and called Steven "stupid," "dumb," and "retarded."  In this time frame, the Beards lost the public housing they had been receiving.  They moved from place to place, with conditions steadily worsening.  They resided at times in a tent and in a filthy camper trailer with no utilities.

In January of 2006, the Beards and the State of Washington entered into an agreed order of dependency with respect to C.B., which contained findings of fact and conclusions of law concerning their fitness as parents.  These facts and conclusions were entered by the Kings County Superior Court.  Steven alleges that the order was the result of undue influence, and that his lawyers resigned at that time.

In June of 2006, the Beards moved to Idaho, with Anna pregnant again.  They lived with David Estes, a paralegal whom they had befriended through their church.  They obtained social and health services for Anna.

On November 1, 2006, B.B. and T.B. were delivered by Caesarian section at St. Joseph's Hospital in Lewiston, Idaho.  An attending physician gave his

**Memorandum Decision and Order - Page 6**

approval for Anna to breast feed the twins.  On November 3, 2006, Bonita Hafer, an employee of the Idaho Department of Social and Health Services, appeared with police officers and served notice to the Beards that the Department was taking custody of B.B. and T.B.  On November 15, 2006, the Honorable Greg Kalbfleisch of the Second Judicial District of Idaho appointed Heather Lee as Guardian ad Litem for B.B. and T.B.

Mr. Beard alleges that the actions and recommendations made by Bonita Hafer were based on information supplied to her from the State of Washington, which was in turn influenced by Stephanie Battisti, Anna Beard's mother.  Since the appointment of the Guardian, the Idaho Department of Social and Health Services has turned over custody of B.B. and T.B. to Tom Battisti, the father of Anna Beard, and the Beards have been denied visitation rights.

Finally, and perhaps most importantly, the Beards were served with a notice of termination of parental rights by the State of Washington in early March of 2007, according to their complaint.  None of the Defendants deny or even acknowledge this claim in their answer.  The petition was signed by Lalitha Moorthy.

After an October 19th hearing, Judge Kessler of the King County Juvenile Court terminated the Beard's parental rights as to C.B.

**Memorandum Decision and Order - Page 7**

As of October 29th, Mr. Beard is visiting B.B. and T.B. in Idaho, indicating that he is partially complying with the reunification plan.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B), in view of Mr. Beard's proceeding *in forma pauperis*, the Court may dismiss this action if it determines that it states a claim upon which relief may not be granted, or that it states a claim for damages against a defendant who is immune from such damages.  A complaint should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *See Smilecare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 784 (9th Cir. 1996).  When addressing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the plaintiff."  *Id*. at 783-84.

## ANALYSIS

Mr. Beard seeks damages from the social workers whom he claims violated his civil rights.  He also seeks an injunctive order that the States of Washington and Idaho return his children.

**1. The Court lacks jurisdiction over the dependency and termination proceedings**.

**Memorandum Decision and Order - Page 8**

The Court cannot offer review, reversal, or stay of the state court proceedings in Washington and Idaho.  "A federal district court has no jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).  "This rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights."  *Id.* at 486 (internal citation omitted).  The Rooker-Feldman doctrine prohibits district courts from exercising jurisdiction over an appeal, reversal, or modification of a state-court judgment.  Such federal jurisdiction is lodged exclusively with the U.S. Supreme Court.  28 U.S.C. § 1257.  The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state court judgment s rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280 (2005).

Mr. Beard's challenge to his children's state custody, and to the termination of his parental rights, amount to a request for review of the decisions of Washington and Idaho state courts.  The proper venue for such a challenge is in a state court with jurisdiction to hear appeals from the trial court.

**Memorandum Decision and Order - Page 9**

Mr. Beard has proceeded under the misapprehension that his claims under federal statutes and the 14th Amendment cannot be heard by a state court. *See Docket No. 30.* That is an incorrect statement of the law, and sheds light on Mr. Beard's pursuit of multiple fora. State trial courts generally have original jurisdiction of claims or causes arising under federal law. *See Lockerty v. Phillips*, 319 U.S. 182, 187 (1943). Congress may deny state courts jurisdiction of particular federal questions. *Gulf Offshore Co. V. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981). For example, 28 U.S.C. § 1333 lodges jurisdiction over maritime cases exclusively in federal district courts. 28 U.S.C. § 1334 does the same for bankruptcy cases. 28 U.S.C. § 1338 grants district courts exclusive jurisdiction over patents, copyrights and trademarks. But as a general rule, state and federal courts exercise concurrent jurisdiction over federal claims.

In the area of family law, the Supreme Court has long held that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890); see also *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) (concluding that "domestic relations are preeminently matters of state law"). "While rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, in general

**Memorandum Decision and Order - Page 10**

it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 13 (2004).

The Court finds that it lacks subject matter jurisdiction to proceed, in view of the remedies sought by Mr. Beard, the prior existence of state proceedings directly parallel to these, and the family law nature of the action.

**2. The Adoption Assistance and Child Welfare Act of 1980 does not create a private right of action**.

Mr. Beard claims violations by the Idaho Defendants of 42 U.S.C. § 671, which is a provision of the Adoption Act of 1980.   The Supreme Court considered a claim based upon 42 U.S.C. § 671, and concluded, "U. S. C. § 671(a)(15) neither confers an enforceable private right on its beneficiaries nor creates an implied cause of action on their behalf." *Suter v. Artist M*., 503 U.S. 347, 364 (U.S. 1992). The Adoption Act was enacted to create terms of eligibility for states to receive federal funding for adoption programs, requiring each state to submit a plan conforming to the features of the Act.  *Id.* at 358.  As no cause of action can be grounded upon this Act, the Court cannot assert subject matter jurisdiction on the basis of 42 U.S.C. § 671.

**3.      Heather Lee is dismissed because she is entitled to quasi-judicial immunity**.

**Memorandum Decision and Order - Page 11**

The Idaho Supreme Court has stated that guardians ad litem should receive

quasi-judicial immunity:

> It is absolutely essential that guardians are free to make such a
> determination, without fear that a parent, seeking a larger award or
> settlement amount, will later sue the guardian for legal malpractice.
> Therefore, we hold that guardians ad litem, appointed under I.C. Section 5-
> 306, operate under the cloak of absolute quasi-judicial immunity.

*McKay v. Owens*, 130 Idaho 148, 158 (Idaho 1997).  When a litigant disagrees with

a judicial decision, or with the determination of a judicial appointee, his proper

recourse is an appeal to a higher court.  *Id.*

There is no dispute that Heather Lee was appointed to be the guardian ad

litem for the children, and therefore she is entitled to assert an immunity defense.

Ms. Lee shall be dismissed from this action.

## 4.      A dispute exists as to Personal Jurisdiction over the Washington Defendants.

It appears that the Court lacks personal jurisdiction over the Washington

Defendants.  Federal due process requires that a nonresident defendant have

minimum contacts with the forum state such that the exercise of personal

jurisdiction does not offend traditional notions of fair play and substantial justice.

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  To avoid dismissal, a

plaintiff must make a prima facie showing of jurisdictional facts.  *Lake v. Lake*,

817 F.2d 1416, 1420 (9th Cir.1987).   Personal jurisdiction over a nonresident

defendant exists if:  (1) the nonresident defendant has some connection with the forum state;  (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.  *See Data Disc, Inc. v. Systems Technology Assoc., Inc*., 557 F.2d 1280, 1287 (9th Cir.1977).  The plaintiff cannot "simply rest on the bare allegations of its complaint," *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Mr. Beard alleges that "the State of Washington instigated the taking of the Beard children in the Stat of Idaho and came to the State of Idaho to testify against Steven Beard in an attempt to cause the taking of his children, B.B. and T.B. in the State of Idaho.  *See Complaint,* ¶ 2.1.  The State of Washington disputes these facts.  *See Docket No. 18,*  ¶ 2.1.

In tort cases, the Ninth Circuit applies an "effects test" for personal jurisdiction as follows: The defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*).

It does not appear that the actions of providing information to the Idaho Health and Welfare Department is sufficient to establish personal jurisdiction over the Washington Defendants.

**Memorandum Decision and Order - Page 13**

**5.     The alleged conspiracy to violate the Beards' civil rights is intertwined with the dependency proceedings.**

Mr. Beard alleges that his mother-in-law asserted her influence as a Washington State employee to start dependency proceedings against the Beards, in violation of their civil rights.  The elements of a conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive him of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement."  *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991)

To prove a conspiracy between state actors and a private party under § 1983, the plaintiff must bring forward evidence showing "an agreement or 'meeting of the minds' to violate constitutional rights."  *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).  Each conspirator "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Id*.  A plaintiff cannot "defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering 'any significant probative evidence tending to support the complaint.'"  *Anderson v. Liberty Lobby*, 477 U.S. at 256.  The conspiracy claim functions as a theory of liability in § 1983 actions.

Whether or not Mr. Beard's conspiracy claim has merit, it is blocked by *Rooker* because the facts surrounding the alleged conspiracy are inextricably

**Memorandum Decision and Order - Page 14**

intertwined with the state dependency proceedings.  The relief sought by Mr. Beard in this Court, under every claim he has brought, is tantamount to a reversal of the state courts and a restoration of parental rights with respect to C.B., T.B. and B.B.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Heather Lee's (Sealed) Motion to Dismiss (Docket No. 43) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants Armstrong, Hafer and Hanson's Motion for Summary Judgment (Docket No. 68) shall be treated as a Motion to Dismiss, and the same is hereby GRANTED.

IT IS FURTHER ORDERED that all pending claims in this action shall be, and the same are hereby, DISMISSED.



DATED:  **December 17, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court